William BAIRD et al., Plaintiffs,

v.

Francis BELLOTTI, Attorney General of the Commonwealth of Massachusetts, et al., Defendants,

Jane Hunerwadel, Defendant, Intervenor.

Civ. A. No. 74–4992–F.

United States District Court, D. Massachusetts.

Feb. 10, 1977.

Roy Lucas, Washington, D. C., Joan C. Schmidt, Boston, Mass., for plaintiffs.

S. Stephen Rosenfeld, Garrick F. Cole, Asst. Attys. Gen., John Reinstein, Brian A. Riley, Mary Laura Russell, Robert J. Reynolds, Roger P. Stokey, Boston, Mass., for defendants.

## OPINION ON MOTION FOR STAY

Before ALDRICH, Senior Circuit Judge, JULIAN, Senior District Judge, and FREEDMAN, District Judge.

ALDRICH, Senior Circuit Judge.

To our certification of questions to the Massachusetts Supreme Judicial Court concerning the meaning of, and procedures under, Mass.G.L. c. 112, § 12P, as directed in *Bellotti v. Baird*, 1976, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844, the court has made a comprehensive response, *Baird v. Attorney General*, 1977, Mass., 360 N.E.2d 288. In so doing it has resolved issues of statutory meaning as to which the statute is so uncommunicative on its face that the defendants and intervenor had, in the past, not only disagreed to some extent among themselves, but had vacillated even in their own views. However, the court has, properly, not ruled on the statute's constitutionality, recognizing that under 28 U.S.C. § 2281, this issue is to be resolved by the federal courts. Plaintiffs seek a stay against the operation of the statute pending that determination. Defendants object, basically, that plaintiffs have not shown a probability of success. They also assert that suspension of the statute will cause irreparable harm to Massachusetts minors.

This last contention hypothesizes the constitutionality of the statute. We do not propose to proceed by assuming the point at issue. We will deal, post, with the separate claim that we should tailor our stay.

With respect to the probability of plaintiffs' success, defendants' refusal to consent to a stay even for briefing—which refusal has, in the past, led to their immediate application to the Supreme Court—puts us in the position of having to form and articulate our tentative views forthwith. In this we have not been assisted by defendants' assertion in oral argument that, with the exception of the mature minor rule, the Massachusetts court has resolved all issues of statutory construction in accordance with what the Supreme Court indicated might accomplish a constitutional solution. This is not so, as the defendants, when questioned, conceded. In their post-argument brief defendants have modified their contention, now relying for their assertion of constitutionality on their surmise of how the individual Justices felt, based upon deductions they draw from the separate opinions in *Planned Parenthood of Central Missouri v. Danforth*, 1976, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788. The surmise is quite unwarranted.[1]

■ We believe there should be a stay, for three reasons. We say this without, on the one hand, excluding further grounds, and on the other, without suggesting that these views are more than tentative.

First, we are troubled by the fact that the statute does not, in terms, advise parents that all they may consider is the minor's best interest. It would be only natural to read the statute the other way; in fact the defendants, the intervenor, and our dissenting brother, 393 F.Supp. 847, 855, 862, 864, D.C., all did so when the statute was before us initially. The statute will be read by parents, and other lay persons, who may not know of, or who may attach no weight to, the Massachusetts court's limita-

---

1. Defendants' claim, that in *Danforth*, six of the Justices indicated approval of prior parental consultation, must rest not only on the dissenting opinions, on the parental consent issue, of Justice White, joined by the Chief Justice and Justice Rehnquist, and of Justice Stevens, which defendants quote extensively in their brief, but also on the concurring opinion of Justice Stewart, joined by Justice Powell, which defendants assert is "for present pur-poses . . . supportive of defendants' position." This last ignores the fact that Justice Stewart, disapproving of an absolute parental veto, states only that parental consultation is desirable "in most cases," expressly referring to the exceptions from the parental consultation requirement which defendants herein had represented, 428 U.S. 66, 96 S.Ct. 2839, wrongly it turns out, post, to be provided for in the Massachusetts statute.

tions, and may continue to read it as defendants did originally. This is not an unimportant matter; we have already seen the Massachusetts decision substantially misquoted. Clearly, the freer a parent may feel to refuse consent, the more likely it will be that the minor will have to go to court. To have to go to court, in opposition to her parents' wishes, is a substantial burden on any minor. In this sensitive area, anything that needlessly and incorrectly increases the likelihood of this, imposes a burden that is constitutionally impermissible.

Second, in a significant manner the Massachusetts court's interpretation of the statute has not lived up to the possibility envisaged by the Supreme Court. At 428 U.S. 145, 96 S.Ct. 2865 the Supreme Court said,

"The picture thus painted by the respective appellants is of a statute that prefers parental consultation and consent, but that permits a mature minor capable of giving informed consent to obtain, without undue burden, an order permitting the abortion without parental consultation, and, further, permits even a minor incapable of giving informed consent to obtain an order without parental consultation where there is a showing that the abortion would be in her best interests. The statute, as thus read, would be fundamentally different from a statute that creates a 'parental veto'." [2]

The Massachusetts court, however, said just the opposite.

"Parental consultation is required in every instance where an unmarried minor seeks a nonemergency abortion. . . . The parents, if available, must be notified

of the court proceeding and must be allowed to participate in it." Mass., 360 N.E.2d 303.

There is already of record strong reason to believe that in some instances it would not be to the minor's best interests for her parents to know of her condition. The statute deprives the court of the right to make such a finding. To this extent the state is ruling what is to a minor's best interests, instead of consigning the question to an unfettered tribunal. Thus it has diminished the only feature of the statute that could save it from the Court's ruling in *Danforth*.

Third. Not only has the Massachusetts court contradicted the claim defendants made to the Supreme Court with respect to a minor's opportunity to show, if that be the case, that it would be to her best interests for her parents not to know of her condition, but it has rejected their further claim that a "mature minor" who is "determined by a court to be capable of giving informed consent will be allowed to do so." [3] 428 U.S. 144, 96 S.Ct. at 2864. We need not presently reach even a tentative view as to whether this difference constitutes an undue state interference with a minor's constitutional right in the particular application, or improperly discriminates generally between abortion and other medical procedures.[4] The Supreme Court has, in substance, instructed us to weigh the "degree and the justification" of such limitations. 428 U.S. 150, 96 S.Ct. 2867. This seems our essential task very possibly requiring further evidence. We propose to proceed as promptly as possible, but we do not believe we should be required to do so under the

---

**2.** For this the Court apparently relied upon defendants' representations as to the legislature's intent, saying that defendants were in a specially good position to know. 428 U.S. 143, 96 S.Ct. 2864.

**3.** The Massachusetts court responded in the affirmative to certified question 2b.

"If the superior court finds that the minor is capable, and has, in fact, made and adhered to, an informed and reasonable decision to have an abortion, may the court refuse its consent based on a finding that a parent's, or

its own, contrary decision is a better one?" Mass., 360 N.E.2d 293.

**4.** We note for the record that there are two aspects to this: the Massachusetts court's ruling that the statute forbids the application to abortions of what would otherwise be the Massachusetts mature minor rule, and a further question, not previously considered, as to the validity of the exclusion of abortions from Mass.G.L. c. 112, § 12F, as added by Mass.Stat. 1975, c. 564. *See* 428 U.S. 70–71, 96 S.Ct. 2841–2842; Mass., 360 N.E.2d 288, 296, 297 *et seq.*

pressure of the statute's being operative in the meantime.

█ Defendants lamented orally, in opposing a stay, that the statute has been on the books for two and a half years, and, except for a brief inadvertent interval, the intent of the legislature has been frustrated for that period. We cannot resist pointing out that defendants, at one time or another, have not only changed their opinion as to what was the legislative intent, but have been twice mistaken. We think that before hurrying to put the legislature's intent into operation it would be well to find out what it is. We make this observation because, in spite of our having abstained in order to have the Massachusetts court instruct us as to the statute's meaning, that court has expressed only its present view, and has added an elastic clause under which the statute will seemingly mean whatever the Supreme Court determines that, constitutionally, it ought to mean.[5] Although in their brief defendants make no direct reference to this portion of the Massachusetts court's opinion, they do argue that if we feel that the statute is unconstitutional because of some of its terms, we should enjoin the operation only of that portion. We cannot agree. We note, first, that the Massachusetts court's apparent delegation of authority, in effect to reconstrue the statute, is extended only to the Supreme Court. *See* n.5, *ante.* Secondly, we note that the Supreme Court's consistent view, most recently expressed in the case at bar, is that a statute may be construed to render it constitutional only when it is "susceptible" to that construction. 428 U.S. 147, 96 S.Ct. 2866. We should have thought that "susceptible" means that the proposed interpretation is one possible meaning of an ambiguous provision. Even there, "[t]he rule of construction to be invoked when constitutional problems lurk in an ambiguous statute does not permit disregard of what [the legislature] commands." *United States v. UAW,* 1957, 352 U.S. 567, 589, 77 S.Ct. 529,

540, 1 L.Ed.2d 563. The problem may be more complex, but we cannot believe that we have jurisdiction, by way of injunction or otherwise, to direct a state superior court judge to interpret and apply a state statute in a manner contrary not merely to its "explicit" terms, Mass., 360 N.E.2d 288, 294 but to the present interpretation of the Massachusetts court. *Ibid.* We must reject defendants' proffer of legislative power.

JULIAN, Senior District Judge (dissenting on motion to stay).

This action was brought as a class action to enjoin as unconstitutional on its face the enforcement of Mass.G.L. c. 112, § 12P. On April 28, 1975, this Court, in a divided decision, declared unconstitutional the parental consent requirement to a minor's abortion and permanently enjoined the enforcement of the statute. Subsequently, on July 1, 1976, the Supreme Court of the United States vacated the judgment of this Court, holding "that the District Court should have certified to the Supreme Judicial Court of Massachusetts appropriate questions concerning the meaning of § 12P and the procedure it imposes." *Bellotti v. Baird,* 428 U.S. 132, 151, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844, 858 (1976). On July 30, 1976, the Honorable William J. Brennan, acting as Circuit Justice, issued an order temporarily restraining enforcement of the statute pending a final decision by the Supreme Judicial Court of Massachusetts. On January 25, 1977, the Supreme Judicial Court rendered an opinion which comprehensively answered each of the nine questions certified by this Court. In its opinion the Supreme Judicial Court stated that it would wait twenty days before certifying an attested copy of its decision to this Court. Thus the stay previously granted by Justice Brennan was dissolved on February 14, 1977, when the certified opinion of the Supreme Judicial Court was received by the clerk of this Court.

**5.** "If the Supreme Court concludes that we have impermissibly assigned a greater role to the parents than we should or that we have otherwise burdened the minor's choice uncon-

stitutionally, we add as a general principle that we would have construed the statute to conform to that interpretation." Mass., 360 N.E.2d 288, 292.

A preliminary injunction will issue only upon a showing that the plaintiffs have a substantial likelihood of prevailing ultimately on the merits and that, absent the preliminary injunctive relief, the plaintiffs will suffer irreparable harm. The plaintiffs have the burden of proving the existence of both these facts. *Automatic Radio Mfg. Co. v. Ford Motor Co.,* 390 F.2d 113 (1 Cir. 1968), *cert. denied,* 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). The majority, however, shifted the burden to the defendant to prove that a preliminary injunction should not issue. By stating that it refuses to "assume the point in issue," (p. 855 of majority opinion), namely, the constitutionality of the statute, the majority has in fact assumed that the statute is unconstitutional. The presumption of constitutionality of statutes (*Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); 16 C.J.S. Constitutional Law § 99) applies to Mass.G.L. c. 112, § 12P. The United States Supreme Court in *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) has vacated this Court's ruling that the statute in question is unconstitutional. The burden of proving that the statute as construed by the Supreme Judicial Court is unconstitutional rests upon the plaintiffs.

The majority relies on three arguments to justify staying the enforcement of Mass. G.L. c. 112, § 12P. First, it contends that the statute is silent regarding the standard to be used by parents in determining whether or not to consent and that Massachusetts parents may be unaware of the Supreme Judicial Court's construction of the statute. This contention is clearly without merit. It is an established rule of law that a state court's interpretation of its own state statutes is binding on the federal courts. See *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass.,* 426 U.S. 482, 487, 96 S.Ct. 2308, 2312, 49 L.Ed.2d 1, 7 (1976); *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Kingsley Picture Corp. v. Regents,* 360 U.S. 684, 688, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959). The majority opinion points out that "a statute may be construed to render it constitutional only when it is 'susceptible' to that construction." (P. 857 of majority opinion.) This Court, however, is precluded from holding that Mass.G.L. c. 112, § 12P, is not susceptible to a constitutional construction, because the United States Supreme Court itself, in *Bellotti v. Baird, supra,* expressly found that the statute is susceptible to a constitutional interpretation:

"It is sufficient that the statute is susceptible to the interpretation offered by appellants; *and we so find* . . . .."

*Id.,* 428 U.S. at 148, 96 S.Ct. at 2866, 49 L.Ed.2d at 856 (emphasis supplied). The Supreme Court's holding is binding upon this Court.

Furthermore, a state court's construction of its own state statutes is deemed to be notice to all concerned of what the statute provides. See *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (by implication). It is not essential to the statute's validity or binding force that the standard be spelled out in the text of the statute itself. It is legally sufficient if it is articulated in the opinion of the state's highest court which construes the statute. It is quite clear from the Supreme Judicial Court's answer to question 1 (*Baird v. Attorney General,* Mass., 360 N.E.2d 288, at 292 n. 4), which was certified by this Court, that the parent when considering whether or not to grant consent is to consider exclusively what will serve the child's best interest.

Furthermore, the Supreme Judicial Court enjoins upon the judges of the Superior Court (*Baird v. Attorney General,* Mass., 360 N.E.2d 288, page 293) that they must "disregard all parental objections, and other considerations, which are not based exclusively on what would serve the minor's best interests." *Id.,* at 293. There is no reason to suppose that the Superior Court judges of this Commonwealth would be unaware of the proper standard by which to review a minor's petition under Mass.G.L. c. 112, § 12P.

A second reason relied upon by the majority for granting the stay is that by imposing a mandatory requirement of consultation between the minor and her parents, the Supreme Judicial Court has " . . . diminished the only feature of the statute that could save it from the Court's ruling in *Danforth*." (P. 856 of majority opinion.) The majority misreads *Danforth*. In *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), the United States Supreme Court struck down the parental consent provision of a Missouri statute because it purported to delegate an absolute veto power to the parents. The Massachusetts statute as construed does not create any such absolute power. Therefore, it is most unlikely that the Massachusetts statute would be declared unconstitutional for the reasons which invalidated the Missouri statute.

The majority (on pp. 856–857, majority opinion) purports to give a third reason for granting the stay. After several readings of the opinion, however, it is still unclear to me what that third reason might be.

Finally, without considering any of the defendant's contentions that the stay might cause irreparable harm to Massachusetts minors, the majority reaches a finding that absent the preliminary injunctive relief, the plaintiffs would suffer irreparable harm. I fail to see how the enforcement of Mass. G.L. c. 112, § 12P, could conceivably result in any harm or injury—irreparable or otherwise—to any of the plaintiffs.

Where is the harm to members of the plaintiff class of Massachusetts minors? If the parents consent to an abortion, as well they might, then no harm would inure to the minor desiring to terminate her pregnancy. If the parents withhold consent but a Superior Court judge determines that an abortion would be in the minor's best interest, then she may have an abortion, and she would suffer no harm. Surely, requiring the minor to comply with minimal legal procedures, though perhaps inconvenient, or even unpleasant, does not constitute irreparable harm or injury to the minor. Only in

the instance where the minor's parents and a state judge concur that an abortion would not be in the best interest of the adolescent girl would she be precluded from having an abortion. Certainly enforcement of a state statute which prevents a minor from undergoing a surgical procedure which is found by both her parents and the Court to be contrary to her own best interests, cannot sensibly be said to cause her irreparable harm.

Where is the harm to Baird or to Dr. Zupnick? Baird's only conceivable harm is a possible diminution of income which might result from the loss of business of some minors who forego having abortions, or who decide under parental guidance to have the operation at a facility other than Baird's. The only harm which can possibly inure to Dr. Zupnick would similarly entail only a loss of income. These financial losses, which would certainly not be ruinous to Baird's business or to Dr. Zupnick's professional career, cannot be considered irreparable.

On the contrary, the harm that is inflicted on the minor and her parents by staying the enforcement of Mass.G.L. c. 112, § 12P, is permanent and grave. A pregnant unmarried minor is likely to be in an emotional turmoil:

> "All experts agreed that pregnancy in an unmarried minor is a period of great emotional stress; . . ."

*Baird v. Bellotti*, 393 F.Supp. 847, 853 (D.Mass.1975) (Aldrich, J.). She may well be confused and unable to decide what to do.

> "We find quite credible defendants' expert who testified that at certain periods of their lives adolescents might react maturely one day and immaturely the next."

*Id.*, at 854, n. 9.

It is undisputed that she would profit from parental support and guidance at this critical juncture in her life.

> "All experts agreed that . . . support is needed, and that parental support, if forthcoming, is most desirable. Probably most parents are supportive."

*Id.,* at 853.

Yet, by staying the enforcement of this statute, a Massachusetts minor who has an abortion without consulting with her parents will be deprived of the counsel, guidance and support which her parents could have provided for her at a critical period in her life and to which she is entitled as a matter of state law. She may be left without guidance to choose among a variety of abortion facilities, unregulated and unsupervised by public or other independent authority.

> "The greatest divergence in the testimony related to the capacity of minors to given [sic] an informed consent. At one extreme, Baird testified that in his many years experience he had never met a minor who was incapable, a conclusion supportable only on a hypothesis, which we reject, that an abortion, if not medically contra-indicated, is always the best solution, so that a minor who wants one must be presumed capable."

*Id.,* at 854. (Footnotes omitted.)

Corresponding to the child's need for parental protection and guidance, the parents have a legal[1] and moral obligation to provide for and protect their child. As the majority finds in their earlier opinion, most parents would wish to know of their child's condition, so that they could discharge their parental obligations.

> ". . . From the standpoint of parents, we believe that most would wish to know of their daughter's pregnancy, and we may assume that most would seek to be supportive."

*Id.,* at 853.

Yet, by staying the enforcement of this statute, information of their child's condition may be kept from them, and they may be deprived permanently of the opportunity of fulfilling, for the benefit of their minor daughter, the parental obligations which they owe her.

The action of this Court staying the enforcement of Mass.G.L. c. 112, § 12P, removes for an indefinite period the only legal barrier in this state against the exploitation of pregnant adolescents by operators of unregulated and unsupervised abortion facilities who may be motivated by concerns which are far removed from the minor's own best interest. The stay granted by the majority is legally unjustified and does not serve the best interest of either the minor or the public.

I respectfully dissent.

---

1. See laws both decisional and statutory cited in fn. 17, *Baird v. Bellotti,* 393 F.Supp. 847, 864 (dissenting opinion).