Ralph M. WYNN, M. D., Allan G. Charles, M. D., Jerzy Jozef (George) Biezenski, M. D., Marvin Rosner, M. D., Jane Doe and Sally Roe, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

William J. SCOTT, Attorney General of the State of Illinois, Bernard Carey, State's Attorney for County of Cook, Illinois, their agents, successors, and all others similarly situated, and Paul Q. Peterson, M. D., Director of Public Health, State of Illinois, Defendants.

No. 78 C 237.

United States District Court, N. D. Illinois, E. D.

Feb. 23, 1978.

Lois J. Lipton, and David A. Goldberger, Roger Baldwin Foundation of the American Civil Liberties Union, Inc., R. Peter Carey, Jeffrey W. Finke, and Merle L. Royce, Sidley & Austin, Chicago, Ill., for plaintiffs.

John D. Gorby, Dennis J. Horan, Patrick A. Trueman, Americans United for Life Legal Defense Fund, Chicago, Ill., for intervening defendant, Eugene F. Diamond, M. D.

Bernard Carey, State's Atty. of Cook County, and John Dienner, Asst. State's Atty., Chicago, Ill., for defendants.

**MEMORANDUM DECISION ON PLAIN-TIFFS' MOTION FOR PRELIMINARY INJUNCTION**

MARSHALL, District Judge.

This civil rights action, brought under 42 U.S.C. § 1983 by four physicians and two pregnant minors, challenges the constitutionality of the Illinois Abortion Parental Consent Act of 1977. Jurisdiction is conferred by 28 U.S.C. § 1343(3). Plaintiffs seek a preliminary injunction restraining enforcement of the Act pursuant to Rule 65(a) F.R.Civ.P. This memorandum will stand as my findings and conclusions and the reasons for my decision under Rules 52(a) and 65(d).

The 1977 Act supplements the Illinois Abortion Law of 1975, Ill.Rev.Stat., ch. 38, §§ 81–21, *et seq.* (1977), which contains a provision prohibiting an unmarried woman under the age of 18 from obtaining an abortion without the consent of one of her parents unless a physician certifies that the abortion is necessary to preserve the life or health of the pregnant woman. *Id.,* § 81–23(4). Enforcement of the 1975 Act has been preliminarily enjoined by a three-judge court of which I am a member, which was convened under the former provisions of 28 U.S.C. §§ 2281, 2284. *Wynn et al. v. Scott et al.,* D.C., 449 F.Supp. 1302 (Wynn I). In that proceeding the defendants (who are the same as defendants here) have conceded the unconstitutionality of the parental consent provision of the 1975 Act in light of *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). The 1977 Act is clearly an effort by the Illinois General Assembly to regulate abortions performed on unmarried minors in a manner compatible with the Fourteenth Amendment as applied in *Danforth.* See, also, *Baird v. Bellotti,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). The broad question for decision is whether the General Assembly has succeeded.

The instant action was commenced on January 23, 1978 and assigned to me as related to *Wynn I.* Because it challenges a different statute than that involved in *Wynn I* and because three-judge courts are no longer required or authorized in litigation challenging state legislation of the nature here involved (28 U.S.C. § 2281 repealed Pub.L. 94–381, August 12, 1976, 90 Stat. 1119), I have entertained plaintiffs' motion for a preliminary injunction without the advice of or consultation with the judges who sit with me in *Wynn I.* As appears, *infra,* there is a slight overlap between the 1975 and 1977 Acts. Accordingly, it should be understood that the views expressed herein are solely mine and do not reflect of the views of my Brothers in *Wynn I.*

As previously noted, plaintiffs are four physicians, Ralph M. Wynn, Allan G. Charles, Jerzy Jozef Biezenski, and Marvin Rosner, and two women, Jane Doe and Sally Roe, who are under the age of 18, unmarried and pregnant. Plaintiff physicians are all engaged in the practice of obstetrics and gynecology. Each is on the staff of a major Chicago hospital. Three are on the faculties of prominent Chicago medical schools. Each is a distinguished member of his profession. Each provides, renders and performs pregnancy termination procedures for minor women as part of his medical practice and each intends to continue such medical services. Each alleges that the traditional and vital privacy of the doctor-patient relationship is curtailed by the 1977 Act because the Act prohibits the performance of an abortion on an unmarried minor woman without the written consent of both of her parents or an order of the Circuit Court of Illinois, except in those cases where an abortion is necessary for the preservation of the life of the pregnant minor. If plaintiff physicians perform a pregnancy termination procedure for an unmarried minor without such prior parental or judicial consent they are subject to criminal sanctions including incarceration for a period of one year. Contrary to defendants' assertion the plaintiff physicians have standing, *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and they have been certified as representatives of a class of all duly licensed physicians and surgeons presently performing or desiring to perform pregnancy terminations on minor patients

in the State of Illinois and on behalf of minor patients desiring pregnancy terminations within the State of Illinois.

Plaintiff Jane Doe is 17 years, 9 months old, unmarried and about 9 weeks pregnant. She desires to terminate her pregnancy without obtaining either the consent of her parents, who reside in the Chicago metropolitan area, or judicial consent. Plaintiff Sally Roe is 17 years, 2 months old, unmarried and about 7 weeks pregnant. She, too, seeks to terminate her pregnancy without obtaining either the consent of her parents, who reside in the Chicago metropolitan area, or judicial consent. Ms. Doe and Roe have verified the complaint using their pseudonyms attesting that the allegations relating to each of them is true and that each has executed the complaint as her free act and deed. The minor female plaintiffs have standing, *Doe v. Bolton, supra, Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and they have been certified as representatives of a class of all unmarried minor females desiring pregnancy terminations within the State of Illinois.

Defendants are William J. Scott, Attorney General of the State of Illinois and its chief law enforcement officer, Bernard Carey, State's Attorney of Cook County, Illinois, who is responsible for the enforcement of the 1977 Act in Cook County, and Paul Q. Peterson, M.D., Director of the Department of Public Health of the State of Illinois, which is charged under the 1977 Act with the responsibilities of prescribing parental or judicial consent forms to be maintained by physicians on the termination of pregnancies of unmarried minor women. Mr. Carey has been sued not only in his capacity as State's Attorney of Cook County, Illinois but as the representative of the class of all State's Attorneys of the various counties of the state. Without objection I certified Mr. Carey as such a representative.

Eugene F. Diamond, M.D. seeks to be appointed guardian ad litem for minor incompetents, unborn children, infants born alive as the result of legal abortions, and pre-born children. In addition he seeks to intervene as a defendant as a parent of a minor daughter of child-bearing age and on behalf of the class of parents of minor daughters of child-bearing age. Dr. Diamond was permitted to intervene in *Wynn I.* While I have no doubt as to the adequacy of the representation which the defendant state and county officials will provide for all interests which are allegedly antagonistic to plaintiffs, I grant Dr. Diamond's motion to intervene as a defendant as a parent of a minor daughter of child-bearing age, Rule 24(b), F.R.Civ.P.

The Illinois Abortion Parental Consent Act of 1977 provides as follows:

Section 1. Legislative Intent. It is the intent of the General Assembly of the State of Illinois that the rights and responsibilities of parents be respected, that the health and welfare of minors and their unborn children be protected, and that no minor child who has not married shall be allowed to undergo an abortion operation without the consultation and consent of her parents, or a court order as part of the informed consent of the minor child seeking the abortion.

Section 2. Title of Act. This Act shall be known and may be cited as the Illinois Abortion Parental Consent Act of 1977.

Section 3. As used in this Act, "abortion" means the use of any instrument, medicine, drug or other substance, whatever, with the intent to procure a miscarriage of any woman, regardless of whether the woman is pregnant or whether a miscarriage is accomplished.

Section 4. No abortion shall be performed in this State if the woman is under 18 years of age and has not married except:

(1) By a duly licensed, consenting physician in the exercise of his best clinical medical judgment;

(2) After the minor, 48 hours prior to submitting to the abortion, certifies in writing her consent to the abortion and that her consent is informed and freely given and is not the result of coercion; and

(3) After the consent of her parents is secured and certified in writing.

If one of the parents has died, has deserted his or her family, or is not avail-

able, consent by the remaining parent is sufficient. If both parents have died, have deserted their family, or are not available, consent of the minor's guardian or other person standing in loco parentis is sufficient.

If such consent is refused or cannot be obtained, consent may be obtained by order of a judge of the circuit court upon a finding, after such hearing as the judge deems necessary, that the pregnant minor fully understands the consequences of an abortion to her and her unborn child. Such a hearing will not require the appointment of a guardian for the minor. Notice of such hearing shall be sent to the parents of the minor at their last known address by registered or certified mail. The procedure shall be handled expeditiously.

The Department of Public Health shall prescribe a written form for such consent. Such form shall be signed by the proper person or persons and given to the physician performing the abortion who shall maintain it in his permanent files.

Nothing in this Section shall be construed as abolishing or limiting any statutory or common law rights of any other person or persons relative to consent to the performance of an abortion for purposes of any civil action or any injunctive relief. This Section does not apply to any abortion performed which is necessary for the preservation of the life of the mother.

Section 5. Any person who performs an abortion in violation of this Act commits a Class A misdemeanor.

Plaintiffs wage an all-out attack on the Act, asserting that, on its face, it places constitutionally impermissible obstacles in the path of an unmarried minor woman's decision to have an abortion. Defendants answer that the Act is a permissible and reasonable regulation of abortions to be performed upon unmarried minors and that the real purpose of the Act is to assure that the unmarried minor woman will consult her parents in respect to her decision to have an abortion and to assure that her consent to an abortion is freely, knowingly and intelligently given. While plaintiffs attack a number of the provisions of the Act, the focal point of the arguments has been addressed to Section 4(3) which mandates parental consent or consent by a judge of the Circuit Court of Illinois.

In response to plaintiffs' motion for a preliminary injunction the class of defendant State's Attorneys have moved to dismiss the complaint for a variety of reasons. First they assert that plaintiffs lack standing. This contention is without merit. *Doe v. Bolton, supra; Roe v. Wade, supra.* Next they assert that the complaint fails to state a claim upon which relief can be granted and that the Act is valid on its face and as applied to plaintiffs. For the reasons hereinafter stated this contention is rejected. Finally they urge, relying upon *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Yesterday's Children v. Kennedy,* 569 F.2d 431 (7th Cir. 1977), that I abstain from deciding the constitutional questions presented until the state courts of Illinois have had the opportunity to interpret and apply the judicial consent provisions of the Act. For the reasons hereinafter stated I have concluded that abstention is inappropriate in this case. Accordingly, the defendant State's Attorneys' motion to dismiss is denied.

The standards applicable to plaintiffs' request for a preliminary injunction are those applicable to like motions in other cases: plaintiffs must demonstrate a substantial likelihood of success on the merits; they must show that without preliminary relief the plaintiff classes will be irreparably injured; it must appear that the issuance of a preliminary injunction will not substantially impair the rights of other parties to these proceedings; finally plaintiffs must show that the ultimate public interest lies in the protection of the constitutional rights which they assert.

In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Supreme Court held that the right of personal privacy recog-

nized in its prior decisions[1] was "broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Wade,* at 153, 93 S.Ct. at 727. State action limiting the woman's right can be justified only by a "compelling state interest . . . narrowly drawn to express only the legitimate state interest at stake." *Id.* at 155, 93 S.Ct. at 728. The state interests which may warrant a limitation on the woman's right of privacy are the preservation of the health of the woman and the protection of a potential life. *Id.* at 148–51, 93 S.Ct. 705.

These state interests depend upon the stage of the pregnancy. During the first trimester abortion poses less of a risk to a woman's health than childbirth. Accordingly, the Fourteenth Amendment prohibits any state interference with the abortion decision during the first trimester, other than a state requirement that an abortion be performed by a licensed physician. *Id.* at 163, 165, 93 S.Ct. 705. In the second trimester, because abortion poses a greater threat to the woman's health, "the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health." *Id.* at 164, 93 S.Ct. at 732. Nevertheless, prohibition of abortion is impermissible during this period.

After viability the state's interest in potential life becomes sufficient to permit it to regulate or even proscribe abortion. However, interference with an abortion is still prohibited if the abortion "is necessary, . . . for the preservation of the life, or health of the mother." *Id.* at 165, 93 S.Ct. at 732.

In *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed. 788 (1976) the Court invalidated a post-*Wade* Missouri statute which required parental consent for an abortion to be performed upon an unmarried woman under the age of 18. Recognizing that parental discretion "has been protected from unwar-

ranted or unreasonable interference from the State," *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and that "the State has somewhat broader authority to regulate the activities of children than of adults" *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) and *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the Court nonetheless held that the "suggested [State] interest [in] safeguarding . . . the family unit and . . . parental authority" must yield to "the right of privacy of the competent minor . . ." *Id.* 428 U.S. at 75, 96 S.Ct. at 2844. Thus the Court stated:

". . . the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent.

"Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Id.* at 74, 96 S.Ct. at 2843.

In concluding its decision on parental consent, the Court added:

". . . [O]ur holding . . . does not suggest that every minor, regardless of age or maturity, may give effective consent for termination of her pregnancy. See *Bellotti v. Baird* [428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844]."

In *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) the Court considered a Massachusetts statute somewhat akin to the one at issue here. That statute, like the Missouri statute in *Danforth,* provided that an abortion could not be performed on an unmarried woman under the

---

1. See, e. g., *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14     L.Ed.2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

age of 18 without her consent and that of her parents. However, the Massachusetts statute went on to provide, "If one or both of the [minor's] parents refuse such consent, consent may be obtained by an order of a judge of the superior court for good cause shown, after such hearing as he deems necessary. Such a hearing will not require the appointment of a guardian for the [minor]." Mass.Gen.Laws Ann., c. 112, § 12P. The enforcement of the statute was enjoined by a three-judge district court in *Baird v. Bellotti*, 393 F.Supp. 847 (D.Mass.1975).

On appeal the Bellotti appellants, by urging a strained construction of the Massachusetts statute,[2] persuaded the Supreme Court that the district court should have abstained pending a construction of the statute by the Supreme Judicial Court of Massachusetts under its rule permitting certification of questions to that court.

> "The picture . . . painted by the respective appellants is of a statute that prefers parental consultation and consent, but that permits a mature minor capable of giving informed consent to obtain, without undue burden, an order permitting the abortion without parental consultation, and, further, permits even a minor incapable of giving informed consent to obtain an order without parental consultation where there is a showing that the abortion would be in her best interests. The statute, as thus read, would be fundamentally different from a statute that creates a 'parental veto.'" 428 U.S. at 145, 96 S.Ct. at 2865.

Thus, a unanimous Court held that "abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Bellotti v. Baird*, 428 U.S. 132, 147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976).

■ *Danforth* and *Bellotti* teach the following. A pregnant minor woman, like her adult counterpart, enjoys a constitutional right of privacy which protects her decision regarding pregnancy termination. The state's interest in safeguarding parental authority, as well as the parents' own interest in the nurture and guidance of their child, must yield to the minor's right. However, the state does have an interest in assuring that the minor's consent to an abortion is intelligently and voluntarily given. This state interest justifies a requirement of either parental consent or, in lieu thereof, judicial consent, so long as the judicial proceeding is not burdensome and the inquiry is limited to the ability of the minor to consent and the voluntariness thereof or, in the instance of a minor found wanting in ability to consent, the minor's best interest. With these principles in mind we turn to the 1977 Illinois Act.

■ As previously noted, defendants urge that I abstain so as to afford the courts of Illinois an opportunity to implement, construe and apply the judicial remedy provisions of the 1977 Act. *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Yesterday's Children v. Kennedy*, 569 F.2d 431 (7th Cir. 1977). Illinois does not have a certification procedure such as was available in *Bellotti*. Furthermore, after the Supreme Court's abstention opinion in *Bellotti* enforcement of the statute was enjoined pending the certification proceedings. See 428 F.Supp. at 857. Thus, pending abstention in *Bellotti*, the plaintiffs' constitutional rights were fully protected by federal court injunctions. That course is not available here. I must either rule or abstain; I cannot both abstain and enjoin.

In a case such as this the price of abstention is high. Clearly the enforcement of the Illinois statute will severely restrict many unmarried pregnant minors in their exercise of their constitutional right of privacy. That restriction will continue while the Illinois courts implement the Act throughout the 102 counties of the state.

---

2. The construction was rejected by the Supreme Judicial Court of Massachusetts in *Baird v. Bellotti*, Mass., 360 N.E.2d 288 (1977) with the result that enforcement of the statute was again enjoined by the district court. 428 F.Supp. 854 (D.Mass.1977).

Some method must be initiated to advise the pregnant minor of her right to challenge in court the refusal of her parents to consent. If she is uninformed in this regard the parents' de facto refusal becomes a de jure veto, for the physician cannot proceed without parental consent unless judicial consent is obtained.

Procedures must be devised to provide the minor with counsel. Certainly she cannot be expected to litigate a question as emotionally charged as that contemplated by the statute—child vs. parent—without the guiding hand of counsel.

The Act makes no provision to protect the anonymity of the pregnant minor. The Constitution not only protects her ultimate decision whether or not to bear a child, it also guarantees that she may make that decision in private without public notoriety. The Act makes no provision for the use of a pseudonym. Rather, it provides for notice to the nonconsenting parents—presumably in their names—by registered or certified mail. This procedural shortcoming—which clearly implicates the minor's substantive privacy rights—may not be insurmountable but defendants have offered no solution for it.

Nor is any pre-hearing, in-hearing or post-hearing procedure spelled out. Despite the fact that the Act was enacted on November 17, 1977 to take effect January 1, 1978, no procedures regarding the hearings it contemplates have been established save for a form of consent to be used by parents or judges. It appears that the Circuit Court of each of the 102 counties in the State may devise its own method of meeting the Act's direction that "The procedure shall be handled expeditiously." No form of petition by the minor or notice to her parents has been suggested. No time limits on the hearing are prescribed. No provision for a record has been made. No procedures for expedited appeal have been spelled out. I realize that the Circuit Courts of Illinois are courts of general jurisdiction and that they have historically accommodated new claims and proceedings fairly and expeditiously. When, however, a new judicial proceeding is created which has as its purpose the restriction or, at the very least, the superintendence of the exercise of a right guaranteed by the Constitution, all of the steps in and dimensions of that proceeding must be visible before a constitutional assessment of the proceeding can be made. In short, here the uncertainties do not point toward abstention, they point away from it.

Nor does the Seventh Circuit's recent decision in *Yesterday's Children, supra,* require a different conclusion. There abstention was approved to enable the Illinois courts to determine the circumstances under which they will lift an apparent statutory prohibition on disclosure to adopted children of the identity of their natural parents and siblings. First, in *Yesterday's Children,* unlike the case at bar, it appeared that at least one state court had entertained a disclosure petition and had confronted the serious constitutional questions raised by non-disclosure.

Second, the vindication of the constitutional rights involved in *Yesterday's Children* is of greatly lesser urgency than the preservation of the constitutional rights involved here. Without in any way denigrating the interest or sincerity of purpose of the plaintiffs in *Yesterday's Children* what they seek is an historic fact concerning their lives. Here, on the other hand, the class of minor women plaintiffs seek to exercise a constitutional right which, with each passing day, becomes physically more difficult and dangerous, to the end that their constitutionally guaranteed decision to terminate their pregnancy may be totally frustrated if they are prevented from acting with dispatch. The rights here involved will not wait for the trial and error in the state courts which must be expected should I abstain in this case.

For the foregoing reasons I have denied the State's Attorney defendants' motion to dismiss on the grounds of abstention.

■ Turning to the merits of the 1977 Act's judicial proceeding in lieu of parental consent, the procedural uncertainties which dictated against abstention also result in the conclusion that it is constitutionally infirm. It is clear from *Bellotti* that any

judicial remedy in lieu of parental consent must be one "without undue burden." 428 U.S. at 145, 96 S.Ct. 2857. Certainly that cannot be said of the 1977 Act as written. The statute does not alleviate any of the burdens which attend even the simplest of judicial proceedings. Most telling are the absences of any provisions for counsel, anonymity, the timing of the hearing and review of a ruling adverse to the minor. Defendants argue that the abortion clinics to which, they surmise, young unmarried pregnant women go, will fill the gap and provide a guiding hand. But what of the girl who lives in a community without such a clinic? And in any event, is she to be expected to commit the vindication of her constitutional right to a physician, counsellor or social worker, assuming they have the time and inclination to speak in her behalf?

As for anonymity, defendants urge that Jane Doe proceedings in the courts of Illinois are as common as they are here. But the minor's anonymity will not be preserved if notice must be given her parents by certified or registered mail.

■ The substance of the 1977 Act is as wanting as is its lack of procedure. Again, *Bellotti* makes clear that while parental consent is a device the State may utilize to safeguard against a minor's uninformed, coerced consent, an alternative without parental consultation must be provided to the mature minor capable of voluntarily giving informed consent. Furthermore, the alternative without parental consultation must also accommodate the right of the minor incapable of giving informed consent upon a showing that an abortion is in her best interests.

The 1977 Act does not meet these requirements nor have defendants suggested that it is subject to such an interpretation or application. Thus parental consultation is required in all cases under the Act and it is assured by notice to the parents of the minor's application for judicial relief.

Furthermore, the requirement of notice to the parents makes them parties to the proceeding, entitled to be heard in opposition to the minor's application. *Danforth* holds that parental rights of nurture and guidance and the State's interest in parental authority are subordinate to the minor's right of privacy. Assuming, arguendo that my reading of *Bellotti* is incorrect and that parental consultation by the minor may be required in all cases, it is quite another thing to grant the parents the standing of parties so that their objections may be heard and presumably acted upon. And this is particularly true where, as here, the only constitutionally permissible inquiries—informed and voluntary consent and the best interests of the minor—are not recognized by the Act.

■ Finally there is the question of the elements of the judicial inquiry. As just noted, the Act does not recognize the only constitutionally permissible inquiries. Rather, it provides that the court must inquire as to whether "the pregnant minor fully understands the consequences of an abortion to her and to her unborn child." Plaintiffs challenge the vagaries of "consequences . . . to her" and object vociferously to "consequences . . . to . . . her unborn child." They urge that the latter elevates the fetus to the level of a person which, they assert, it is not. As to this contention, plaintiffs' position is without merit. *Roe v. Wade, supra,* recognized that any abortion involves termination of the potentiality of human life and, a late abortion, the termination of prenatal life. These are immediate consequences of an abortion and are appropriate elements of an inquiry as to whether the minor's consent is informed. *Danforth, supra* 428 U.S. at 66–67, 96 S.Ct. 2831.

We have greater difficulty with the judicial inquiry into the minor's comprehension of the consequences to her. Do these consequences include only those which are physical and emotional or psychological? Or, as defendants suggest, do they include social, ethical, ethnic, spiritual and family or parental consequences? If they include the latter are the parents to be heard in respect to them? The specter of a child vs. parent adversary proceeding again arises in the context of competing interests which the Constitution has already resolved.

In sum, I conclude that the 1977 Act does not provide a judicial remedy, in lieu of parental consent, which meets the *Bellotti* standards. The remedy is unduly burdensome. It is totally silent on procedures essential to its effective utilization. It makes parental consultation mandatory in all cases.· The elements of the judicial inquiry are not limited to those which are constitutionally permissible. It is, in my judgment, void on its face.

■ I turn briefly to the balance of plaintiffs' complaint. They attack § 1 of the Act as protecting nonexistent rights of "unborn children" and requiring parental consultation and consent or a court order in respect to abortions performed on all unmarried minor women. The section is not a substantive one. It does not contain any requirements or sanctions. There is nothing to enjoin in respect to it.

■ Plaintiffs also attack the § 4(1) phrase "in the exercise of his best clinical medical judgment." A virtually identical regulation was sustained in *Doe v. Bolton, supra,* 410 U.S. at 191–192, 93 S.Ct. 739.

■ Plaintiffs also attack the 48 hour waiting period between consent and abortion required by § 4(2). In *Wolfe v. Schroering,* 541 F.2d 523, 526 (6th Cir. 1976) a 24 hour waiting period was sustained. A 48 hour waiting period is not unreasonably burdensome.

■ Plaintiffs next attack the requirement in § 4(2) that the minor's consent be in writing and that she certify that her consent "is informed and freely given and is not the result of coercion." That is a minimal, permissible requirement intended to safeguard the State's interest that consent be intelligently and voluntarily given.

Finally, plaintiffs challenge the definition of abortion contained in § 3. The definition is essentially the same as that used in the 1975 Act, the enforcement of which has been preliminarily enjoined by and the validity of which is pending before the three-judge court in *Wynn I.* In deference to the three-judge court any opinion respecting the validity of § 3 should await that court's decision in *Wynn I.*

■ In respect to § 4(3) of the Illinois Abortion Parental Consent Act of 1977, plaintiffs have shown a clear likelihood of success on the merits. They have also shown that they will suffer irreparable harm to their exercise of their constitutional rights if they are not granted preliminary relief. The rights of the defendants are clearly subordinate to plaintiffs' rights with the result that defendants will not suffer any cognizable harm by the issuance of a preliminary injunction. Finally it is manifest that the ultimate public interest lies in the vindication of plaintiffs' constitutional rights. Accordingly a preliminary injunction will issue, without bond, restraining defendants William J. Scott, Attorney General of the State of Illinois, Bernard Carey, State's Attorney of Cook County, Illinois and the class of all State's Attorneys of Illinois, and Paul Q. Peterson, Director of the Department of Public Health of the State of Illinois, from enforcing any portion of Section 4(3) of the Illinois Abortion Parental Consent Act of 1977.