REQUESTED BY: Dear Senator DeCamp:
This is in response to your request for an opinion, dated February 28, 1979, wherein you inquired as to the constitutionality of LB 316, as amended. You requested that we give particular attention to the provision requiring a forty-eight hour waiting period before a woman can obtain an abortion. In addition, you have inquired whether the forty-eight hour waiting period provision is severable, if the court determines that it is unconstitutional.
Initially, we note that you have requested receipt of our opinion prior to March 6, when this legislation comes up for final vote. We will hereinafter discuss the principal constitutional issues which are raised by LB 316, however, time constraints combined with the complexity of the issues preclude an exhaustive analysis of this legislation.
Informed Consent: Section 2 of LB 316, prohibits an abortion in the absence of an informed consent, unless the woman is unable to consent and in the physician's best judgment the woman's life is substantially endangered. Informed consent is defined in section 1 of LB 316 and includes a statement that the woman has been informed of: a) reasonably possible medical and mental consequences of abortion, childbirth and pregnancy; b) possible alternatives to abortion including childbirth and adoption and the existence of agencies available to assist her to carry her pregnancy to natural term; and c) the abortion procedures to be used.
In a recent Attorney General's Opinion, No. 55, March 24, 1977, we considered the constitutionality of a substantially similar provision. Essentially we concluded, based on the Supreme Court's opinion in Planned Parenthood ofCentral Missouri v. Danforth, 428 U.S. 52, 49 L.Ed.2d 788,96 S.Ct 2831 (1976), that the constitutionality of the provision could probably be upheld since it promotes a legitimate state interest without, in our opinion, posing an undue burden upon the decision to be made by the woman and her physician.
The rationale and conclusion reached in our prior opinion is equally applicable to the informed consent provision contained in LB 316. In addition, the Supreme Court sinceDanforth, supra, summarily affirmed a district court's decision upholding an informed consent provision substantially similar to that contained in LB 316. Planned ParenthoodAss'n v. Fitzpatrick, 401 F. Supp. 554 (ED Pa 1975) aff'dsub. nom., Franklin v. Fitzpatrick, 428 U.S. 901,96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976).
Forty-eight Hour Waiting Period: Section 2 of LB 316 prohibits an abortion without a forty-eight hour waiting period after the woman gives her informed consent, `. . . unless, in the best medical judgment of the physician, an emergency situation exists.' The term, `emergency situation' is defined in section 1 as, `. . . a condition exists that in the best medical judgment of the physician the abortion should be performed without delay so as not to adversely affect the best physical or mental health of the woman.'
The forty-eight hour waiting period applies to all stages of pregnancy, including the first trimester. Thus, it is subject to constitutional challenge based on the Supreme Court's decision in Roe v. Wade, 410 U.S. 113,35 L.Ed.2d 147, 93 S.Ct. 705 (1973). Therein the court held:
"For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician." 410 U.S. at 164.
The analysis does not end with Roe v. Wade, supra,
since in Danforth, supra, the court upheld the statutory requirements of informed consent which applied to the first trimester. This requirement was challenged on the ground that it imposed an additional layer of regulation which burdened the abortion decision. The court emphasized that the abortion decision is an important, often stressful one. The court held that the state had a legitimate interest in assuring that the woman's decision was made with full knowledge of its nature and consequences. The court upheld the provision despite the fact that apparently under Missouri law a written statement of informed consent was not required for other surgical procedures.
The issue to be addressed is whether the forty-eight hour waiting period requirement overly burdens the abortion decision or whether it permissibly effectuates a state interest. The issue is not capable of easy resolution.
The statutory exception for `emergency situations' renders the requirement less burdensome. The purpose of the requirement of a delay is to prevent hasty decisions. As such, it addresses a similar consideration as that involved in the informed consent requirement. In other words, it purports to promote a state interest in assuring that the woman's decision is made after thoughtful consideration of its nature and consequences. However, the effect of the delay is more speculative and its promotion of the state interest in assuring informed decision-making is more tenuous than the informed consent requirement.
In Wolfe v. Schroering, 541 F.2d 523 (6th Cir. 1976), a Kentucky statute which required a twenty-four hour waiting period between the woman's consent and the abortion unless an emergency situation presented imminent danger to the woman's life was attacked on constitutional grounds. The court upheld the provision on the basis of the reasoning inDanforth, supra.
In Wynn v. Scott, 448 F. Supp. 997 (ED Ill., 1978), a forty-eight hour waiting period between a minor's consent and the abortion was upheld as being not `unreasonably burdensome.'Id. at 1006.
In our opinion, the forty-eight hour waiting period requirement raises a substantial constitutional question. However, we believe that it may pass constitutional muster as promoting a legitimate state interest without unduly burdening the woman's right to decide to terminate her pregnancy.
Severability: Section 13 of LB 319 provides:
 "f any section in this act or any part of any section shall be declared invalid, such declaration shall not affect the validity or constitutionality of the remaining portions thereof."
State law is controlling on the issue of severability.Wynn v. Scott, supra, 449 F. Supp. at 1314. The principles emphasized in this jurisdiction to determine whether the remainder of a statute should be upheld if portions of the statute are held unconstitutional where articulated inChase v. County of Douglas, 195 Neb. 838, 851,241 N.W.2d 334 (1976), wherein the court, quoting from State ex rel.Meyer v. County of Lancaster, 173 Neb. 195, 209-10,113 N.W.2d 63 (1962), stated:
 "Does this invalidity void the entire act? The fact that a part of a law is invalid does not always require that the entire law be treated as void. If the part that is bad is independent of and separable from the balance of the law, or if the invalid part was not an inducement to the passage of the act, or if the remainder of the act is not so connected with the invalid portion that it cannot be upheld without doing violence to the legislative intent as a whole or result in putting into effect a law which the Legislature would not have passed had its attention been called to the invalid parts, the portion of the act that is valid may be sustained and given effect."
A severability clause contained in a legislative act is a declaration of the intent of the Legislature and the basic rule of statutory interpretation is to effectuate the legislative intent if it is a lawful one. State ex rel. Meyerv. County of Lancaster, supra, at 210.
In the context of the present inquiry, the remainder of LB 316 is in no sense dependent upon the forty-eight hour waiting period provision. Nor is there any indication that upholding the remainder of the act would violate the legislative intent, rather the opposite is true. Therefore, in our opinion, if the forty-eight hour waiting period provision is found unconstitutional, it is severable and the remainder of the act could be upheld.
Prohibition of Abortion Post-Viability: Section 3 of LB 316 prohibits an abortion, `. . . after the time at which, according to standard medical practice and sound medical judgment of the attending physician, the unborn child clearly appears to have reached viability, except when necessary to preserve the woman from an imminent peril that substantially endangers her life or health.'
Viability as defined in section 1 of LB 316, is consistent with the definition articulated in Roe v. Wade,supra, 410 U.S. at 160, 163 and Danforth, supra,428 U.S. at 63, 64. Abortion as defined in section 1 of LB 316, requires knowledge and intent, which appear to enhance the constitutionality of the sections using that term.
In our opinion, section 3 of LB 316, may possibly be subject to constitutional attack on grounds of vagueness because of the inclusion of what appears to be both an objective and subjective standard, neither of which are defined, to determine the time at which an unborn child clearly appears to have reached viability. In Danforth, supra, the court indicated that the determination of viability must be a matter for the judgment of the attending physician.428 U.S. 64. See also, Collautti v. Franklin, 439 U.S. 379,99 S.Ct. 675, L.Ed.2d (1979). We are uncertain whether a state may constitutionally include an additional objective standard as a condition of criminal liability. This concern is equally applicable to the language in section 4 of LB 316.
Parental Consultation: Section 6 of LB 316, prohibits an abortion of an unemancipated woman who is under the age of eighteen, unless, in addition to her informed consent, she signs a statement indicating that she has consulted with her parents or guardian. The requirement of parental consultation is not applicable in an emergency situation, as defined in section 1. Section 6 also contains provisions to insure the confidentiality of the informed consent and parental consultation statements.
Since this section applies to all stages of pregnancy, including the first trimester, it is also subject to attack as unconstitutional state interference under Roe v. Wade,supra.
In the previously mentioned Attorney General's Opinion, No. 55, March 24, 1977, we also considered the constitutionality of a similar provision requiring parental consultation. We concluded therein that, in our opinion, a requirement of parental consultation could be successfully defended against constitutional attack. Our prior conclusion and the rationale employed are equally applicable to this provision in LB 316. We point out, however, that this conclusion is not without uncertainty, as there is some support for the opinion that Bellotti v. Baird, 428 U.S. 132,96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), may be interpreted to require an alternative to parental consultation for a mature minor capable of giving informed consent. Wynn v. Scott,supra, 448 F. Supp. at 1005.
In contrast to the provision which we considered in our prior opinion, section 6 of LB 316 refers to an `unemancipated' woman. The term `unemancipated' is not statutorily defined. The statement of consultation form found in section 6 refers to `a minor'. A minor is defined in section 38-101, R.R.S. 1943, as an unmarried person under the age of nineteen. Since section 7 provides for criminal penalties if an abortion is performed without the written statement required by section 6, in our opinion the discrepancy in terms may render the section subject to a constitutional challenge on the ground of vagueness.
Recordkeeping: Section 9 of LB 316 enumerates certain specific information which must be reported to the Department of Health when an abortion is performed. The reporting form, which may not include the patient's name, must be kept confidential except upon court order. Section 10 requires the Department of Health to prepare compilations from the reporting forms. The compilations may not identify the attending physician or the facility where the abortion was performed. The compilation is a matter of public record.
Although recordkeeping provisions apply to abortions performed during the first trimester of pregnancy, the Supreme Court in Danforth, supra, upheld such a provision in the Missouri statute. In so holding, the court inDanforth, supra, stated:
 "Recordkeeping and reporting requirements that are reasonably directed to the preservation of maternal health and that properly respect a patient's confidentiality and privacy are permissible." 428 U.S. at 80.
The court indicated that the requirements of confidentiality and retention for a seven year period, assisted in persuading it that the Missouri statute was constitutional.
Sections 9 and 10 of LB 316 do not specify a period of time for maintaining the required records. However, these provisions appear to satisfy the general standards articulated in Danforth, supra. In our opinion, the recordkeeping provisions in LB 316 are constitutionally defensible.
To summarize, in our opinion, the informed consent provision of section 2 of LB 316 would likely be upheld if challenged on constitutional grounds; the forty-eight hour waiting period provision of section 2 is constitutionally defensible, but if it is struck as unconstitutional, it is severable; the prohibitions in section 3 and section 4 of LB 316 may raise a constitutional question as to vagueness due to the use of an additional, undefined objective standard of determining viability; the parental consultation provision of section 6 is constitutionally defensible, except for a substantial vagueness question raised by the discrepancy in the use of the undefined terms, minor and unemancipated; and the recordkeeping provisions of section 9 of LB 316 are constitutionally sound.